IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JOSEPH R. PHILLIPS-BEY          )
     a/k/a JOSEPH R. PHILLIPS,     )
                       )
        Plaintiff,            )
                       )
v.                              )          CIV-11-1491-M
                       )
DR. McPHAIL, et al.,            )
                       )
        Defendants.           )

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. § 1983. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Before the Court is the Motion to Dismiss or, alternatively, Motion for Summary Judgment filed by Defendants McPhail, Stouffer, and Fleener-Halvorson[1] (Doc. # 20), to which Plaintiff has responded (Doc. # 29). Defendants McPhail and Stouffer have also caused the filing of a Special Report consistent with Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978), and in compliance with the Order entered February 16, 2012. For the following reasons, it is recommended that the Motion be granted and that summary judgment enter in favor of

---

[1]Defendant Fleener-Halvorson has notified the Court that she was mistakenly identified as Defendant "Fleener" in the Complaint. Therefore, this Defendant's correct name has been used in this Report and Recommendation. Defendant Fleener-Halvorson did not originally join the dispositive motion filed by Defendants McPhail and Stouffer. However, Defendant Fleener-Halvorson was granted leave to supplement the Motion for Summary Judgment/Motion to Dismiss in order to include Defendant Fleener-Halvorson as a party/movant. Order (Doc. # 41).

Defendants McPhail, Stouffer, and Fleener-Halvorson.

I. Complaint

In Plaintiff's Complaint filed December 20, 2011, Plaintiff contends that in March 2011, while he was in custody at Lawton Correctional Facility ("LCF"), a private prison in Oklahoma, he was "assaulted" by Defendant McPhail and that Defendants "'Doctor McPhail,' LPN Stouffer and RN MSD BC Fleener" did not provide medical care for his "injury(s)." Complaint, at 3.

In more specific detail, Plaintiff alleges that on March 25, 2011, he was escorted by correctional officials to LCF's medical unit, that his blood pressure was checked, and that he was taken to an office in the medical unit to wait for an examination.  Plaintiff alleges that during this office visit Defendant McPhail accused Plaintiff of hoarding medications in his cell, which Plaintiff denied.  Plaintiff alleges he felt threatened by Defendant McPhail and he "opened the office door to leave," while ignoring Defendant McPhail's directives to return to the office.  When Plaintiff opened the door to the medical unit, Defendant McPhail "tried to stop [him] from going through the door" but that he proceeded through the door whereupon Defendant McPhail "slammed the door into [Plaintiff's] body" and "trapped [Plaintiff] momentarily between the door and door frame" by using his hands and body weight to slam the door into Plaintiff's body.  Plaintiff alleges that Defendant McPhail injured Plaintiff by "using the door as a weapon" until Plaintiff was able to exit the door and return to his cell.  Plaintiff then contacted the medical unit and informed "medical desk personnel" that his left hand was injured. Complaint, at 4-5.  He admits that x-rays were

2

taken of his hand in the facility's medical unit, but he alleges that he was not provided any other medical treatment even though he complained of pain from the injury.

In count one, Plaintiff alleges that Defendant McPhail used unconstitutionally excessive force which caused unnecessary pain and mental anguish. The claim in count one is generously construed to assert an Eighth Amendment deprivation. In count two, Plaintiff alleges that he was denied adequate medical care by Defendants McPhail, Stouffer, and Fleener-Halvorson. He alleges that he requested medical treatment for "swelling," pain, and "movement difficulties" in his left hand on March 25, 2011, and that he submitted sick-call requests on March 29, 2011, and April 3, 2011, for medical treatment for the left hand injury. Plaintiff alleges that he was escorted to the medical unit for treatment on April 20, 2011, but Defendant McPhail refused to treat Plaintiff. The claim in count two is generously construed to assert an Eighth Amendment deprivation due to Defendants' deliberate indifference to Plaintiff's serious medical needs. In count three, Plaintiff alleges "cruel and unusual punishment and denial [of] due process" based on the same allegations set forth in counts one and two. Complaint, at 8. To the extent Plaintiff alleges he was subjected to "cruel and unusual punishment" as a result of the allegations set forth in counts one and two of the Complaint, count three merely repeats the same claims urged in counts one and two. Plaintiff also alleges that the same facts alleged to support his Eighth Amendment claim in counts one and three also support a claim of deprivation of his right to due process.

II. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6)

motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on

its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Under this standard,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Factual allegations,

as opposed to conclusory allegations, are accepted as true and viewed in the light most

favorable to the nonmoving party. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th

Cir. 2007).

A *pro se* plaintiff's complaint must be broadly construed under this standard. See

Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972).

However, the generous construction to be given the *pro se* litigant's allegations "does not

relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal

claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  See Whitney

v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional

factual allegations to round out a plaintiff's complaint or construct a legal theory on a

plaintiff's behalf"). A court evaluating a Rule 12(b)(6) motion to dismiss may consider the

complaint as well as any documents attached to it as exhibits. Hall, 935 F.2d at 1112.

Summary judgment may be granted when there is no genuine dispute as to any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a).  In considering a motion for summary judgment, the court reviews the evidence and

inferences drawn from the record in the light most favorable to the nonmoving party.  Burke

v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007).  A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id.  "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Burke, 462 U.S. at 1258 (internal quotation marks and citations omitted).   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations omitted).

III. Uncontroverted Facts

Regarding Plaintiff's claims against Defendants McPhail, Stouffer, and Fleener-Halvorson, the following facts are not disputed by the parties:

1. Plaintiff is incarcerated in the custody of the Oklahoma Department of Corrections ("ODOC") serving a term of imprisonment of 21 years.

2. LCF is a private prison owned and operated by GEO Group, Inc., which has contracted with ODOC to house Oklahoma inmates consistent with Oklahoma law and ODOC policies.

3. Plaintiff names three current or former employees of LCF as Defendants: Defendant McPhail was employed as a Clinical Nurse Specialist ("CNS") at LCF, Defendant Stouffer is a Licensed Practical Nurse ("LPN") employed at LCF, and Defendant Fleener-Halvorson

was employed at LCF as the Health Services Administrator ("HSA").

4. Plaintiff had an appointment with CNS McPhail on March 25, 2011, and was housed in the LCF medical housing unit on that date.

IV. Exhaustion of Administrative Remedies

Defendants McPhail, Stouffer, and Fleener-Halvorson move for summary judgment on the ground that Plaintiff has failed to exhaust available administrative remedies with respect to his Eighth Amendment and due process claims of excessive force asserted in counts one and three of the Complaint. The Prison Litigation Reform Act ("PLRA"), enacted in 1996, requires a prisoner to exhaust available administrative remedies prior to filing a lawsuit in federal court challenging prison conditions under 42 U.S.C. § 1983 or any other Federal law. 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This mandatory exhaustion requirement, see Jones v. Bock, 549 U.S. 199, 211 (2007), applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). To properly exhaust administrative remedies, Plaintiff must "us[e] all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

Having asserted the affirmative defense of failure to exhaust administrative remedies, Defendants McPhail, Stouffer, and Fleener-Halvorson bear the burden of proof. See Jones, 549 U.S. at 215-216 (holding failure to exhaust administrative remedies is affirmative defense); Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007)("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant.").

In order to succeed on their motion for summary judgment, Defendants McPhail, Stouffer, and Fleener-Halvorson must therefore demonstrate the absence of a disputed material fact on the issue of exhaustion. See Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997). If Defendants satisfy this burden, Plaintiff would incur the obligation to "demonstrate with specificity the existence of a disputed material fact. If the [P]laintiff fails to make such a showing, the affirmative defense bars his claim[s], and the [Defendants are] then entitled to summary judgment as a matter of law." Id.

The procedure for exhausting administrative remedies for Oklahoma inmates, including inmates incarcerated in private prisons, is set forth in ODOC Policy OP-090124. Under this administrative process, the prisoner must first attempt to informally resolve the matter with the appropriate staff member within three days of the incident. See Special Report, att. 4 (OP-090124), at 16. If that attempt is unsuccessful, the inmate must submit a Request to Staff ("RTS") addressed to the appropriate staff member within seven days of the incident. See id. at 17. If the inmate is still not satisfied, the inmate may file a grievance with the reviewing authority within fifteen days of the incident or of the staff's response to his

RTS, whichever is later.  See id. at 17-21.  If the inmate remains dissatisfied with the result, the inmate may appeal to the ODOC administrative review authority or, where appropriate, the chief medical officer within fifteen days of the reviewing authority's response.  See id. at 21-23. After this step, the administrative procedure would be completed.  Id. at 23.  See Thomas v. Parker, 609 F.3d 1114, 1117 (10th Cir. 2010)("The ODOC grievance process has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority."), cert. denied, __ U.S. __, 131 S.Ct. 1691 (2011).

In support of their exhaustion defense, Defendants rely on the grievance submissions and responses included in the Special Report, which are not disputed.  See Special Report, (Doc. # 19).  Following the incident that is the basis for Plaintiff's claims in counts one and three, Plaintiff filed a RTS on March 31, 2011, addressed to Defendant Fleener-Halvorson in her capacity as the HSA at LCF.  In this RTS, Plaintiff  described an alleged "assault" upon him by Defendant McPhail on March 25, 2011, in which Defendant McPhail "slammed" a door in the LCF medical unit while Plaintiff was exiting through the door. Special Report (Doc. # 19), att. 15.  Plaintiff alleged that the "door hit/connect[ed] with my left hand." Id.  As relief, Plaintiff requested "medical care and something [be] done to rectify these injuries I sustained from Dr. [sic] McPhail's assault upon me." Id.  In response to this RTS, Defendant Stouffer advised Plaintiff that he was "examined the day of the alleged incident" and "[t]he CCTV cameras do not support your allegations." Id.

Plaintiff submitted a grievance dated April 13, 2011, to Defendant Fleener-Halvorson

in which he asserted that he had been denied medical treatment, despite his requests, for "ongoing pains from the injury of my left hand," and Plaintiff requested "immediate medical attention to my left injuried [sic] hand." Id., att. 16.  Plaintiff did not mention the alleged assault by Defendant McPhail in this grievance.

In response to this grievance, Defendant Fleener-Halvorson advised Plaintiff that the grievance was partially granted with the following explanation:

> On 3/25/2011 you were examined by LPN Smith in response to left hand pain.  An x-ray was ordered and completed the same day.  The x-ray revealed swelling to the soft tissue but no fracture, dislocation or other abnormality.  You were scheduled a follow up visit with a provider on 4/8/2011.  You were not escorted to your appointment so it was not completed and you were rescheduled for 4/15/2011.

Id., att. 17.

Plaintiff submitted an appeal to ODOC's administrative review authority dated April 21, 2011, in which he asserted that although he was granted "partial relief" concerning his grievance "no one seem [sic] to be commenting on the fact that Doctor [sic] McPhail use[d] eccessive [sic] force against me, which caused me injury." Id., att. 18.  Plaintiff further asserted that he had not "spoken to any medical personnel or seen anyone about [his] left hand." Id., att. 18.

ODOC Medical Services Administrator McCoy responded to the appeal, stating that on March 25, 2011, Plaintiff's left hand was examined by a nurse after Plaintiff reported it was injured, that three x-rays were obtained of Plaintiff's left hand, and that according to the radiologist's report the left hand was unremarkable other than soft tissue swelling. Id., att.

19. Further, Mr. McCoy stated that on May 6, 2011,

> Dr. Balogh reexamined your left hand. According to his note, the dorsal aspect of the left hand had trace swelling present without discoloration. The physician also reviewed the x-ray and concluded that the soft tissue swelling and bruising was resolving. If you need further assistance with any health concerns, you must submit a [RTS] form (attached) to the medical unit at your facility, via the sick call process.

Id.

Prior to submitting his appeal of the first grievance, Plaintiff submitted a second RTS dated April 19, 2011, to Defendant Fleener-Halvorson. In this RTS, Plaintiff stated that he had made two requests for medical care for the left hand injury but he had "not been seen since date 3-25-11" and "I am being denied medical attention, so please explain why." Id., att. 20. Plaintiff did not mention the alleged assault by Defendant McPhail in this RTS.

In response to this RTS, Defendant Stouffer noted that Plaintiff was seen by a provider on April 20, 2011, and advised Plaintiff that if he needed further treatment he must submit a Request for Medical Services. Id. Plaintiff submitted a grievance to Defendant Fleener-Halvorson dated April 28, 2011, in which he again complained that he had submitted several medical requests for treatment of his left hand injury and that he "was seen by Physician [sic] McPhail on date 04/20/11 concerning my shoulder injuries [sic] and chest pains" but that Plaintiff "was not allowed to discuss the injuries of my left hand." Id., att. 21. Plaintiff requested "medical services concerning my injuries." Id. Plaintiff did not mention the alleged assault by Defendant McPhail in this grievance.

In response to this grievance, Defendant Fleener-Halvorson stated that relief was

granted because x-rays were taken of Plaintiff's left hand on March 25, 2011, which revealed "soft tissue swelling but no broken or dislocated bones" and that Plaintiff's shoulder was examined on May 6, 2011, and "the results of the x-ray of your shoulder that was completed on 4/20/2011 was reviewed." Id., att. 22. Defendant Fleener-Halvorson further explained to Plaintiff that the shoulder exam revealed no abnormality and the shoulder x-ray revealed "hypertrophic degenerative changes of the AC joint which is a natural occurrence in people over the age of 40." Id. Plaintiff received this grievance response on May 11, 2011. Id.

On April 28, 2011, Plaintiff submitted another grievance to Defendant Fleener-Halvorson in which his sole complaint concerned inadequate medical treatment for hypertension. Id., att. 23. Plaintiff received a response to this grievance on May 5, 2011, from Defendant Fleener-Halvorson. Id., att. 24. In this response, Plaintiff's history of multiple instances of medical treatment during the month of April 2011 was summarized, and Plaintiff was advised that relief was denied. Id.

Defendants also rely upon the affidavit of Ms. Debbie Morton, who avers that she is the Manager of ODOC's Administrative Review Unit, that she had reviewed the offender grievance records for Plaintiff, and that Plaintiff did not file a grievance concerning "being assaulted by a nurse at [LCF] on March 25, 2011." Id., att. 25.

In Plaintiff's responsive pleading, Plaintiff makes several new allegations of retaliatory actions by LCF officials and other alleged misconduct by LCF medical personnel that were not set forth in the Complaint. These allegations will not be reviewed as the response to a dispositive motion is not an appropriate mechanism for amending a complaint.

See Boyer v. Board of County Comm'rs of County of Johnson County, 922 F. Supp. 476, 482 (D.Kan. 1996)("It is inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time.").

Plaintiff asserts in his responsive pleading that he exhausted administrative remedies when he submitted his administrative grievance appeal to ODOC Medical Services Administrator McCoy.  Plaintiff, however, did not assert in any grievance presented to LCF officials or medical staff that Defendant McPhail used excessive force on March 25, 2011, in the medical services unit of the prison.  Although Plaintiff raised his excessive force allegation in his administrative grievance appeal, ODOC's Medical Services Administrator McCoy did not address this issue in her response to his grievance appeal. Special Report (Doc. # 19), Att. 19.

Defendants McPhail, Stouffer, and Fleener-Halvorson have presented evidence that Plaintiff failed to exhaust each step of the administrative grievance procedure available to him with respect to his claims asserted in counts one and three of the Complaint. Plaintiff has not presented evidence demonstrating a material, disputed fact exists as to whether he exhausted available administrative remedies concerning these claims.  Under these circumstances, Defendants McPhail, Stouffer, and Fleener-Halvorson's Motion for Summary Judgment seeking judgment as to Plaintiff's excessive force claims based on the Eighth Amendment and due process in count one and three of the Complaint should be granted.

V. Deliberate Indifference to Serious Medical Needs - Personal Participation

In count two of the Complaint, Plaintiff alleges that Defendants McPhail, Stouffer,

and Fleener-Halvorson "knew that the Plaintiff suffered from injuries of his left hand" on March 25, 2011, following his alleged encounter with Defendant McPhail. Complaint, at 6. Plaintiff admits that he was seen in the prison's medical unit on March 25, 2011, and that on the same date x-rays were taken of his left hand. Complaint, at 5.  However, Plaintiff contends that he "was not provided any other medical treatment other than the X-Rays." Id. Although Plaintiff alleges that "the medical personnel" refused to provide any treatment for his left hand pain, he does not assert that one or more of the named Defendant was present in the medical unit on that date. Complaint, at 6.

Plaintiff further alleges in count two that he requested medical treatment on March 29, 2011, for left hand pain and "movement difficulties in his left hand" but that "Defendants and their staff" refused to provide him with medical treatment. Id. Plaintiff alleges that he again requested medical treatment on April 3, 2011, but that "defendants and their staff refuse[d] to . . . provide the plaintiff any medical treatment for his injuried [sic] left hand." Id.  Plaintiff alleges that he was seen by Defendant McPhail in the prison's medical unit on April 20, 2011, but that Defendant McPhail refused to provide medical treatment.

Plaintiff's claim in count two is governed by the Supreme Court's decision in Farmer v. Brennan, 511 U.S. 825 (1994), in which the court reiterated that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828.  Under this standard, the Eighth Amendment is violated if prison officials show "deliberate indifference to an inmate's serious medical needs." Mata v. Saiz 427 F.3d 745, 751 (10th Cir. 2005).  A plaintiff claiming that prison officials have been

13

deliberately indifferent to his or her medical needs must prove two elements.  The prisoner

must show that, objectively, the inmate's medical needs were "sufficiently serious," and,

subjectively, the prison official acted with a "sufficiently culpable state of mind" such that

the official knew of and disregarded an excessive risk to inmate health or safety.  Self v.

Crum, 439 F.3d 1227, 1230-1231 (10th Cir.), cert. denied, 549 U.S. 856 (2006). Id. at 1230-

1231; see also Mata, 427 F.3d at 751.  An "'inadvertent failure to provide adequate medical

care' is not enough, nor does 'a complaint that a physician has been negligent in diagnosing

or treating a medical condition . . . state a valid claim of medical mistreatment under the

Eighth Amendment.'" Self, 439 F.3d at 1230 (quoting Estelle v. Gamble, 429 U.S. 97, 105

(1976)).

A medical need is sufficiently serious if it "has been diagnosed by a physician as

mandating treatment or ... is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir.

2000)(internal quotation omitted).  Plaintiff alleges in the Complaint only that he "sustained

injuries" to his left hand on March 25, 2011, and that his left hand was x-rayed in the prison's

medical unit on that date.  Complaint, at 8.  Although he alleges he experienced left hand

pain and swelling, he does not describe a specific medical impairment other than generalized

"injuries" to his left hand. Complaint, at 6.  A medical progress note appearing in the Special

Report and dated March 25, 2011, indicates Plaintiff complained his hand was shut in a door.

Special Report (Doc. # 19), att. 6.  The medical provider, LPN Smith, noted that Plaintiff

complained of pain in his left hand, that on examination his left hand exhibited slight

14

swelling, and that x-rays were ordered. Id.  The Special Report includes a report dated April 3, 2011, and signed by a radiologist which states that Plaintiff's left hand was x-rayed on March 25, 2011, and that the x-rays were interpreted as showing only "[s]oft tissue swelling of the dorsal aspect of the left hand, but otherwise unremarkable left hand." Id., att. 7.

Defendants Stouffer and Fleener-Halvorson seek summary judgment with respect to Plaintiff's claim against them in count two on the ground that there is no genuine issue of material fact as to their personal participation.  Assuming without finding that Plaintiff's left hand soft tissue swelling constituted a serious medical need, there is no dispute that Plaintiff was seen by a staff member in the prison's medical unit on March 25, 2011.  Plaintiff alleges only that he was seen by "medical personnel" at the prison. Complaint, at 6.  Plaintiff does not allege that either Defendant Stouffer or Defendant Fleener-Halvorson was present at the time he was treated in the prison's medical unit on March 25, 2011, or that either of these Defendants actually denied him medical treatment.  Plaintiff merely asserts that after x-rays were taken of his left hand he was "not provided any other medical treatment other than the X-Rays." Complaint, at 5.

Plaintiff alleges that he requested medical treatment on March 28, 2011, and on April 3, 2011, for the left hand injuries, but again Plaintiff alleges in the Complaint only that "defendants and their staff" generally did not respond to his requests for medical treatment. In his responsive pleading, Plaintiff again makes only a generalized assertion that "defendants and their junior staff" did not treat his complaints of pain and swelling and that "from date 3/25/11 until date 5/06/11 the defendants refused any medical service to be

15

provided to the Plaintiff for his injuried [sic] left hand" and he was "force[d] to suffer the pains of the injury. . . ." Plaintiff's Response, at 14.  In his Response, Plaintiff alleges that Defendant Stouffer "provided supervision concerning the plaintiff's injuried [sic] left hand" and "[t]hrough her supervisory [sic] she had the responsibility to assure that the plaintiff's medical needs were met." Plaintiff's Response, at 18-19.   Plaintiff also alleges that Defendant Stouffer "refuse[d] to supervise her junior staff to ensure that the plaintiff received adequate medical service for his injuried [sic] left hand" and she "used excuses to justify her actions of not supervising her junior medical personnel, to make sure the Plaintiff receive medical care in a timely manner." Plaintiff's Response, at 20.

As to Defendant Fleener-Halvorson, Plaintiff alleges in his responsive pleading that he had informed her of his injury through RTS and grievance forms and that "Defendant Fleener has a responsibility to supervise medical personnel under her authority.  She did not exercise of [sic] control or direction and failed to supervise and because of these facts, the Plaintiff was denied adequate medical service for 41 days." Plaintiff's Response, at 20.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1948 (2009).  "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.   "The factors necessary to establish a Bivens violation will vary with the constitutional provision at issue." Id.  But after  Iqbal it is clear that  "mere knowledge" of a subordinate's misconduct is not enough. Id. at 1949. See

Dodds v. Richardson, 614 F.3d 1185, 1198 (10th Cir. 2010)("[W]hen a plaintiff sues an official under *Bivens* or § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well."). In this circuit, the "denial of a grievance does not constitute 'personal participation' under 42 U.S.C. § 1983." Driggers v. Clark, 422 Fed.Appx. 747, 750 (10th Cir. May 5, 2011)(unpublished order)(citing Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009)).

Because no reasonable juror would find that Defendants Stouffer or Fleener-Halvorson personally participated in the alleged denial or delay in providing medical treatment to Plaintiff following his initial complaint of left hand pain on March 25, 2011, Defendants Stouffer and Fleener-Halvorson are entitled to summary judgment with respect to Plaintiff's Eighth Amendment claim in count two of the Complaint.

With respect to Defendant McPhail, Plaintiff alleges in his Complaint in count two that Defendant McPhail refused to treat Plaintiff on April 20, 2012, when he was "escorted to the medical infirmary" by two guards for a scheduled appointment. Complaint, at 7. Defendant McPhail seeks summary judgment and  Defendants Stouffer and Fleener-Halvorson alternatively seek summary judgment with respect to Plaintiff's claim against them in count two on the basis that no material issue of fact exists with respect to the element of deliberate indifference.

In support of their dispositive motion, Defendants rely on the medical progress notes

appearing in the Special Report and a Request for Medical Services attached to the Motion. These uncontroverted evidentiary documents reflect that on March 25, 2011, Plaintiff was seen in the prison's medical unit where he complained of left hand pain as a result of his hand being "shut in door." Special Report (Doc. # 20), att. 6.  The nurse who examined Plaintiff, LPN Smith, noted that the left hand exhibited slight swelling and that the hand would be x-rayed.  In a report dated April 3, 2011, a radiologist interpreted the x-rays of Plaintiff's left hand conducted March 25, 2011, as showing only "[s]oft tissue swelling" without other abnormality. Id., att. 7.  On March 28, 2011, a progress note prepared by Ms. Wallace in the LCF medical unit noted that Plaintiff was scheduled to see Dr. Carns with regard to his complaint of "pain when cuffed in back [with] hand restraints" but that due to his security status and the lack of support staff for an escort, the appointment was cancelled and rescheduled. Id., att. 8.

On March 29, 2011, Plaintiff requested medical treatment for left shoulder pain. Defendants' Motion to Dismiss, att. 2.  On March 31, 2011, a progress note prepared by Ms. Wallace in the LCF medical unit noted that Plaintiff was scheduled to be seen regarding his complaint of "shoulder pain" but because of his security status and the lack of support staff for escorts, the appointment was rescheduled. Id., att. 9.  On April 8, 2011, a progress note prepared by Ms. Wallace in the LCF medical unit noted that Plaintiff was scheduled to be seen by Dr. Balogh for recheck of his "swollen hand" but that due to security lock down and no available escorts from the segregation unit the appointment was rescheduled. Id., att. 10. On April 15, 2011, a progress note prepared by Ms. Wallace in the LCF medical unit noted

that Plaintiff was scheduled to be seen by Dr. Balogh for evaluation of a "swollen hand" but that due to Plaintiff's security status and the lack of support staff for escort, the appointment was rescheduled to the next available appointment with the physician. Id., att. 11.  On April 20, 2011, Plaintiff was seen in the LCF medical unit by ARNP McPhail who noted Plaintiff complained of right shoulder pain and discomfort since 2008 when he was injured in an altercation and reinjured two months earlier while handcuffed.  Id., att. 12. Mr. McPhail noted that although the shoulder was "normal" on examination, x-rays were ordered for Plaintiff's right shoulder pain. Id.  On May 6, 2011, a Dr. Balogh completed a progress note in which he noted that Plaintiff complained of left hand pain when his "left hand may have inadvertently been caught in a door" and right shoulder pain. Id., att. 13.  Dr. Balogh noted that on examination Plaintiff's left hand exhibited "resolving soft tissue swelling/bruise." Id.

In his responsive pleading, Plaintiff does not dispute the accuracy of the medical progress notes included in the Special Report.  Plaintiff alleges only that medical personnel could have provided medical treatment to Plaintiff in his cell between March 28, 2011 and May 6, 2011, or he could have been moved to the prison's medical unit. Plaintiff's Response (Doc. # 29), at 15.  Plaintiff admits, however, that he was confined to the prison's restrictive housing unit beginning March 25, 2011. Id.  Plaintiff contends that the prison's "lack . . . of security to escort" him to the medical unit does not justify the deliberate indifference shown him by "defendants and their junior staff." Id. at 17.

Considering the undisputed facts in the light most favorable to Plaintiff, a reasonable jury would not find that Defendants acted with a culpable state of mind with respect to the

provision of medical treatment to Plaintiff following his complaint of hand pain on March 25, 2011. The undisputed evidence shows that the prison's medical staff addressed Plaintiff's complaints on March 25, 2011, that x-rays were taken which showed only soft tissue swelling, and that he was scheduled for follow-up medical treatment of his swollen left hand by the prison's physician but that those appointments were rescheduled for reasons connected with the prison's legitimate security needs until May 6, 2011, when the prison's physician examined Plaintiff's left hand and noted the soft tissue swelling and bruise were "resolving." Plaintiff was examined by Defendant McPhail, a nurse at LCF, on April 20, 2011, regarding his complaint of right shoulder pain, and x-rays of his right shoulder were ordered. There is no material issue of fact for trial with respect to Plaintiff's claim that Defendants were deliberately indifferent to Plaintiff's serious medical needs in count two, and Defendants' Motion for Summary Judgment as to the claim in count two should be granted.

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that Defendants McPhail, Stouffer, and Fleener-Halvorson's Motion for Summary Judgment (Doc. # 20) be GRANTED and that judgment issue in favor of Defendants and against the Plaintiff as to Plaintiff's claims in counts one, two, and three of the Complaint. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by _____December 10th_____, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would

waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___20th___ day of ___November___, 2012.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE